K.T. Richards Construction Good morning, your honors. May it please the court, Brent Ames for the appellant, Joseph The issue before the court today is simply whether an accident occurred which arose out of and occurred within the petitioner's employment with the respondent, which, once again, I acknowledge is a question of fact and presents a difficult burden to overcome. You also have some serious credibility issues to address, don't you? I mean, did the commission, quite candidly, really find your client was not credible? The commission did find an issue on credibility, but due to mistakes in the commission's record, it calls into question their finding regarding the petitioner's credibility on the issue. Specifically, the commission's failure to consider all of the evidence it's finding that no work entry was reported to any medical doctors until approximately August 23rd of 2006 is incorrect, and it's just not true in the record. In fact, if the commission would have considered all of the evidence, the commission would have found that on January 16th, 2006, which is a full seven months before they reported the accident, the petitioner did report to his treating doctor in a preoperative physical, the doctor mentioned that his entry was a result of a work entry. I assume that latter date was wrong. According to you, almost seven months went by before there was any report of a medical injury, correct? Well, a trauma was consistently reported. That is a twisting of the ankle. You're not answering my question. When was the first report following the accident to a medical provider that he had a workplace injury? That would be January 16th, 2006. And that was how long after the accident? Approximately seven months. Okay. So how does that weigh in favor of the claimant? Well, on the issue of credibility, all of the facts must be taken into account when the commission made that decision, and that is, as the story goes, the petitioner, a 28-year journeyman carpenter, injures himself at work, attempts to work through the injury. When he finds that it's a serious ankle injury which requires some serious medical treatment and some time off of work, he attempts to open up a workers' compensation claim with his supervisor, only to be told, too late, you can't make it a comp case, but for your benefit, we'll wait until the winter months, we'll lay you off, you can get unemployment, you can recover from your surgery, then we'll take you back to work. The employer representative who he claimed to have that conversation with denied that conversation, right? That's correct, Judge. Were there any witnesses at this accident to begin with? There were several witnesses in the vicinity. It's a big job site. What was the job site? He didn't even know where he was at. Right. Matthew Street, the supervisor on behalf of the respondent, did testify that at that time the petitioner was working two different job sites, that being the Marquis Estates development and the Lago Vista development, and because they were working both, I believe he himself, Mr. Street, could not remember on the particular day which site that they were working. Well, he contended he was working at the Marquis Estates. Their payroll records show he was working at Lago Vista. He first claimed it happened on May the 1st. That was a Sunday. Then he changed his mind and it became May the 3rd. And the payroll records contradicted that he worked the rest of the week following his alleged injury on May the 3rd. They found he just lacked credibility. He testified he gave notice to Elliot Kaye. Kaye testified he worked on the Marquis job site and that the claimant never reported anything to him. So why can't they believe Kaye? Well, when considering everything in this context, including the fact that he had the conversations with his boss, that he wanted to put off the surgery, wait until he was laid off, and it wasn't until he was not allowed to come back to work while he was recovering from his surgery that he attempted to talk to his union, talk to an attorney, and at that point, it is, I believe, August 23rd, excuse me, July 11th, 2006, when the Respondent's alleging, well, this is the first that we've ever heard of a work accident. And that's the reason why the missing record, which was not considered, is so important. Because the Respondent will have you believe that the first that they heard of a work accident was July 11th, 2006, which was following the surgery in January when he talked to his union representative, he talked to an attorney, and the attorney's the one that called the Respondent and said, hey, where's our claim number, what happened in here? The claimant's testimony, let's go back to the special question I asked earlier, what eyewitnesses were there to this accident? That testified. That testified. That would be the petitioner. So it rests entirely on his credibility, right? And the medical, the consistent medical documentation. Beginning seven months later. Well, right, but I cited. Well, what does that medical record that you keep relying on say seven months later? I mean, it doesn't say chronic pain in his right ankle area due to injury that he sustained earlier last year, possibly at work. Right. Your best case scenario is a doctor, seven months after the accident, said it's possible he sustained an injury at work. And the term possible would be extremely important if we were here arguing causal connection. I acknowledge that. But we're not talking about causal connection in the term possibly. We're talking about the petitioner's credibility in reporting a work injury. Look, you've got a commissioner, you've got a petitioner who doesn't know what day he's injured on, doesn't know which job site he was at when he was injured. He's convicted by people on the job site when they say they didn't notice anything unusual about his work or his behavior. And on the other side of the coin, you've got him saying it happened on such and such a day, it happened at this job site. And who gets to decide who's telling the truth? Us? The arbitrator did find the petitioner. No, no, forget about the arbitrator. It's not the finder of fact. The commissioner is the finder of fact. Correct. So now the question becomes, if you have this problem of these people contradicting each other, somebody has got to solve the problem. And it's the commissioner. And the dissenting commissioner noted that the majority's decision was clearly and unfortunately against the manifest weight of the evidence. That was based on their failure to consider all of the evidence. And in the Luckinville decision, which I cited, much was made about the fact that, okay, he reported a twisting ankle injury. He reported an injury, but he didn't say that it happened at work until the January 16, 2006 date, and then to his treating surgeon later on after he couldn't come back to work. Now, simply stated, as the Luckinville case indicated, it's simply not fair to hold him to that standard, a journeyman carpenter who's never had a workers' compensation case before in his 28 years, to know, well, yeah, I guess I need to tell them that I did injure myself. It happened at work. So when you actually review all of the ---- Could you tell me in Luckinville whether we affirm the commissioner or we reverse them? It wasn't affirmed. Certainly. Because it's manifest weight, and they get to choose. And if they don't put a big deal on the fact that it wasn't reported for 15 months, we can't. But when they put a big deal on and say that's one of the factors they're considering, we can't ignore it. Certainly. Their failure to take into account all the treatment records, including ---- Are the treatment records based on your claimant's statements, or are they based on something else? The report of injury would be based on the claimant's statements, but the objective medical evidence is what it is, and it demonstrated a twisting injury to his ankle. Well, that could have happened at any time. I mean, theoretically. I mean, is it not fair to say that really the claimant's case sort of stands or falls on his credibility here, doesn't it? Not alone, when you consider all of the medical documentation. Well, nobody disputes his ---- he was hurt. This case is where ---- was he hurt at work? That's what this case is about. I don't think there's any argument here that he didn't have an injury. He was treated for an injury. The question is where it happened. And it's when considering all the ---- His reports to his initial treating physicians were inconsistent. He talked about he'd had multiple times that he'd twisted his ankles and so forth, and never reported that he did it at work on a specific date. I've been having trouble with my ankles for a long time. I keep twisting my ankles. Right? It is correct that he indicated that it happened. And vague references when they said, when did this injury occur? Well, I believe it happened about a month ago. And then later on, well, it happened several months ago, up until the point where he had surgery. And it happened about a year ago. Once again, given the record as a whole, it's unfair to hold him to that standard to say my injury happened on May 3, 2005. It was a work-related injury. Here's exactly how it happened. Here's why it arises out of and occurred in the course of my employment. When you consider all of the evidence as a whole which corroborates his testimony and which was not considered by the Commission, specifically that missing record, seven months prior to their finding, which they indicated in their decision was the, quote, most persuasive, end quote, it's clear that they did not consider all of the evidence in the record that they should have. For the foregoing reasons, appellant respectfully requests that this honorable court reverse the decision of the circuit court, which affirmed the decision of the Commission in finding no accident. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Good morning. May it please the Court, I'm Paul Pasci on behalf of the respondent, Mr. Ames. I would fully agree that this is a manifest weight case, and I would suggest to the Court that there's a lot of manifest weight to consider, a lot of the things that you've already pointed out during argument today. It's a manifest weight case that hinges in almost its totality on the credibility of the claimant, correct? It does in the manner in which the Commission decided it. In my opinion, there were numerous other issues that also militated against, or I'm sorry, militated in favor of the Commission's decision that were not directly cited by them and relied upon by them, including the question of whether there was, in fact, an injury to begin with, because I think there's ample medical evidence to suggest that perhaps Dr. Jaeger treated a phantom here. If you look at the x-ray reports and you look at the description of the surgery and compare that with Dr. Holmes' learned opinion about what those things showed as well, there's a serious question as to whether there was. Well, he doesn't dispute the fact that he had surgery, do they? We know that he underwent a surgical procedure. And we also know he went to an emergency room in July. That's correct. Okay. So, I mean, is it your suggestion that he allowed somebody to operate on him when he wasn't injured at all? I don't know that he was necessarily aware of the fact of what was going on, but I think that Dr. Jaeger's testimony calls into question whether there was an actual condition that he operated on. I got to understand this. A person is not injured, is faking an injury, but lets a doctor cut him and perform some type of a surgery? I mean, this guy, I mean. It has happened before. I'd like to know where. I mean, I understand that people blame surgery on events other than the events that caused the need for the surgery. But people actually having surgery on healthy body parts just to collect workers' comp, do you think that's what happened? It has happened. Even in my career as an attorney, I can tell you I've had clients ask me if they undergo surgery if it will give them a better case. All right. If you hadn't heard anything here in advance, what would your primary argument have been? The important thing here, and again, pardon me? My question was, if you hadn't heard anything here previous, what would your first argument have been to us? My first argument would be that the commission's decision was consistent with a great deal of evidence, and if not the manifest way of the evidence, certainly ample evidence to support their decision. It would have been credibility. It would have been his credibility, absolutely. So we don't want to get off as we talked all morning about speculation and conjecture about phantom operations. Your argument should be very simple. It is very simple. Manifest way, the commission didn't believe him. He didn't know when his accident happened. He didn't know where his accident happened. Every person that he testified he talked to about his accident denied having that conversation. He did not report a work accident to the first few doctors that he saw. He didn't know who his supervisor was at the time. And the other factor that goes against his credibility that I don't think the commission cited but I think is important is that he filed a claim for unemployment about three months after this alleged accident happened while he was working, and the payroll records that were in evidence showed that he was working full time and claiming unemployment at the same time, which also affects his credibility. There was sufficient evidence to support the commission's decision. That's it, in a nutshell. Okay. So you're seeking an affirmance of the commission. We are. I would also just add one last thing, and that is that there was an issue of notice raised by the commission, too, and that decision also was supported by the evidence, and we would ask that that be affirmed as well. Thank you. Thank you, counsel. And I will be brief. The commission did not make any determination regarding notice because it never got that far. It simply said no accident occurred, and that's the issue before you today. And if all the evidence is taken as a whole, including the fact that these conversations with his boss about too late to file a comp case for us, lay off, have your surgery, come back to work, and then he was stuck in a precarious situation of trying to approve a case retroactively, everything is completely consistent and believable along the boards. All the medical documentation, all the witnesses' testimony. Jill Lieberstein, for example, who is the secretary who says she's in charge of reporting these cases to comp, said this is the first that I've heard of it. Well, he didn't report it to her. Of course this is the first he's heard of it. He talked to his supervisor on the scene. For the foregoing reasons, we'd ask that the decision be reversed as to the issue of accident there. Okay. Thank you, counsel, both for your arguments in this matter. We'll take an advisement that this position shall issue.